WATTS, J.,
concurring.
Respectfully, I concur.[1] I would affirm the Court of Special Appeals’s determination that the child is the legitimate child of Stephen Sieglein (“Sieglein”), Petitioner, and Laura Schmidt (“Schmidt”), Respondent, and that both Sieglein and Schmidt are the child’s legal parents. I would not hold, however, that Md.Code Ann., Est. & Trusts (1974, 2011 Repl.Vol.) (“ET”) § 1-206(b)’s reference to “artificial insemination” includes the circumstance where a child is conceived through in vitro fertilization (“IVF”) using a donated egg and donated sperm, ie., that artificial insemination includes IVF. I think that the Court need not make this determination. Instead, I would hold that ET § l~206(a) applies to the circumstances of this *678 case, and that an individual may be declared a parent pursuant to ET § 1-206(a) where a child is conceived during the marriage, and with the consent of both parties, through IVF using a donated egg and donated sperm, and where the individual has failed to present good cause sufficient to rebut the statutory presumption of legitimacy. Rather than judicially interpreting ET § 1-206(b)’s definition of artificial insemination, I would commend the matter to the General Assembly to determine whether ET § 1 — 206(b), a statute that was enacted before the existence of IVF, should be amended in light of numerous advances in reproductive medicine.
As an initial matter, I would conclude that, because this case involves a child who was bom during Sieglein’s and Schmidt’s marriage, the statutes in Subtitle 10 (Paternity Proceedings) of Title 5 (Children) of the Family Law Article do not apply. As Md.Code Ann., Fam. Law (1984, 2012 Repl.Vol.) (“FL”) § 5-1002(b) makes clear, the purpose of Subtitle 10 is, among other things, “to promote the general welfare and best interests of children born out of wedlock” and “to impose on the mothers and fathers of children bom out of wedlock the basic obligations and responsibilities of parenthood[.]” (Emphasis added). See also Evans v. Wilson, 382 Md. 614, 634, 856 A.2d 679, 691 (2004) (“[O]ne of the purposes of the paternity act is to promote the general welfare and best interests of children born out of wedlock.” (Citation and internal quotation marks omitted) (emphasis in original)). In any event, even within Subtitle 10 is a presumption of legitimacy. Specifically, FL § 5-1027(c)(1) provides: “There is a rebuttable presumption that the child is the legitimate child of the man to whom its mother was married at the time of conception.”
Rather, because the child was born during the marriage, ET § 1-206 applies. This Court has explained that “an action to establish paternity is more appropriately brought under the Estates & Trusts Article when the child at issue has been born during a marriage.” Evans, 382 Md. at 627-28, 856 A.2d at 687 (citation and internal quotation marks omitted). Indeed, “where a child is presumed legitimate^] and where two *679 men each acknowledge paternity of that child, the procedure for considering the issue of paternity under the Estates and Trusts Article is preferable because it presents the more satisfactory and less traumatic means of establishing paternity.” Id. at 628, 856 A.2d at 687 (citations and internal quotation marks omitted). To be sure, this is not a case in which two men are claiming paternity of a child born during a marriage. However, because the child was born during the marriage and not out of wedlock, I would conclude as an initial matter that ET § 1-206 is the statute that governs in this case.
ET § 1-206, concerning the presumption of legitimacy, provides, in its entirety, as follows:
(a) Marriage of parents. — A child born or conceived during a marriage is presumed to be the legitimate child of both spouses. Except as provided in [ET] § 1-207 ..., a child born at any time after his parents have participated in a marriage ceremony with each other, even if the marriage is invalid, is presumed to be the legitimate child of both parents.
(b) Artificial insemination. — A child conceived by artificial insemination of a married woman with the consent of her husband is the legitimate child of both of them for all purposes. Consent of the husband is presumed.
Thus, ET § 1-206(a) creates a statutory presumption of legitimacy for children who are born to a married mother. And, ET § 1-206(b) extends that presumption of legitimacy to children who are conceived by artificial insemination of a married mother with the consent of her husband. As this Court explained in Evans, 382 Md. at 629, 856 A.2d at 688, “a blood or genetic test may be ordered only upon a showing of good cause” sufficient to overcome the statutory presumption of legitimacy under ET § 1-206, and, in “making the determination of good cause, the [trial] court must weigh the various interests of the parties and, in particular, consider whether blood or genetic testing would be in the best interests of’ the child. In any event, in my view, there is no need even to *680 consider whether ET § 1-206(b) includes children who are conceived through IVF as opposed to artificial insemination because ET § 1-206(a) applies in the first instance.
Importantly, in my view, Sieglein has not presented any evidence to rebut ET § 1-206(a)’s presumption of legitimacy. Indeed, absent evidence of fraud or duress, no parent who voluntarily consented to the use of IVF with an anonymous donor to conceive a child during marriage could overcome the presumption of legitimacy that is established by ET § 1-206(a). For example, in this case, Sieglein has not alleged that Schmidt acted unilaterally in undergoing IVF, or that his signature on the consent form with the Shady Grove Fertility Reproductive Science Center was forged or made under duress. Indeed, by all accounts, the record reveals that Sieglein was an active participant in the couple’s decision to pursue IVF. And, once the child was conceived and born, Sieglein was identified on the child’s birth certificate as the child’s father, and Sieglein participated in the care of the child immediately following the child’s birth. Sieglein has not alleged that his participation was involuntary, or that his consent was obtained by any manner of fraud or coercion. The donor process was anonymous, and there is no other putative father who contests the child’s parentage. Thus, I would have no difficulty in concluding that, under ET § 1-206(a)’s plain language, Sieglein is the parent of the child who was conceived during the marriage, with the consent of both parties, through IVF using a donated egg and anonymously donated sperm, where Sieglein has failed to present good cause to rebut the statutory presumption of legitimacy.
To conclude otherwise — that a child who is conceived during a marriage and with the consent of both parties through IVF using a donated egg and donated sperm is not presumed to be the legitimate child of both spouses — would be contrary to the statutory presumption of legitimacy. This simply could not have been the General Assembly’s intent. Rather, by enacting ET § 1-206(a)’s predecessor in 1969, the General Assembly clearly and unequivocally demonstrated an intent to extend a statutory presumption of legitimacy to children who are *681 bom or conceived during a marriage. Accordingly, I would hold that, under ET § 1-206(a), because the child was conceived and born during Sieglein’s and Schmidt’s marriage, the presumption of legitimacy applies, the child is presumed to be the child of both Sieglein and Schmidt, and the presumption has not been rebutted. In other words, Sieglein is the child’s father and legal parent, and thus is “jointly and severally responsible for the child’s support, care, nurture, welfare, and education” under FL § 5-208. Because I would resolve this case through application of ET § 1-206(a), I would refrain from engaging in an analysis of whether ET § 1-206(b)’s reference to “artificial insemination” includes IVF. Recognizing that IVF did not exist at the time that ET § 1-206(b) was enacted and that this circumstance casts serious doubt on the General Assembly’s intent to have artificial insemination include IVF and other advances in reproductive medicine, I would refer the matter of amending the decades-old statute to the General Assembly for its consideration.
For the above reasons, respectfully, I concur.

. I agree with the Majority that the Circuit Court for Harford County ("the circuit court”) was correct in concluding that Stephen Sieglein ("Sieglein”), Petitioner, was voluntarily impoverished under Md.Code Ann., Fam. Law (1984, 2012 Repl.Vol.) ("FL”) § 12~204(b) and in imputing potential income to Sieglein for purposes of calculating his child support obligations, see Maj. Op. at 673-74, 136 A.3d at 767-68, and that the circuit court did not abuse its discretion in granting a permanent injunction to Laura Schmidt, Respondent, pursuant to FL § 1-203, see Maj. Op. at 676-77, 136 A.3d at 769.